United States District Court
Southern District of Texas
**ENTERED**
May 21, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE  YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-392 |
| | § | |
| CANDACE  MOORE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO GRANT DEFENDANTS' SUMMARY JUDGMENT MOTION

Plaintiff  Joe  Young  asserts  in  this  prisoner  civil  rights  action  that  certain defendants have violated his constitutional rights by retaliating against him.  Defendants Candace Moore, Corey Furr, and Janet Salles have filed a Motion for Summary Judgment on Plaintiff's remaining retaliation claim.  (D.E. 30).  For the reasons discussed herein, it is respectfully recommended that their summary judgment motion be GRANTED.

## I.    JURISDICTION

The  Court  has  federal  question  jurisdiction  over  this  civil  action  pursuant  to  28 U.S.C. § 1331.

## II.   BACKGROUND

Plaintiff  is  a  prisoner  in  the  Texas  Department  of  Criminal  Justice,  Criminal Institutions Division (TDCJ-CID).  The  facts  giving  rise  to  Plaintiff's  claims  in  this lawsuit occurred during Plaintiff's current assignment to the McConnell Unit in Beeville, Texas.  Plaintiff names the following McConnell Unit officials as defendants in this civil rights action: (1) Candace Moore, director of the law library; (2) Corey Furr, assistant

warden; (3) Jennifer Smith, mailroom supervisor; (4) Janet Salles, mailroom employee; (5) Veronica Inmon, employee in the classification department; (5) Joe Gonzalez, Jr., a guard; and (6) various John and Jane Does. (D.E. 1, p. 3).

Plaintiff stated in his original complaint that he was found guilty of committing a disciplinary infraction for filing a false financial statement. He cites Texas Penal Code § 37.101, which prohibits filing or causing to be filed a financing statement that the person knows is forged, contains a material false statement, or is groundless. Plaintiff was not criminally charged, but was instead subjected to a TDCJ-CID disciplinary proceeding. Plaintiff claimed that the charges were brought against him in retaliation for his participation as a witness in two federal cases involving Defendants Moore, Gonzalez, and Furr.

Plaintiff further claimed that Defendants Smith and Salles conspired with Moore to deny him the right to access the courts by not processing payment of a filing fee in the Dallas County Probate Court although the funds were available in his account. Plaintiff asserted that, because he could not participate in a court proceeding, he lost a house he inherited from his mother valued at $93,000. Finally, he complained that his custody level, G-5, is extremely restrictive and subjected him to cruel and unusual punishment.

Plaintiff sought relief in the form of an order that $400 be disbursed from his inmate account to pay the filing fee in the probate matter pending in Dallas County Court, a declaratory judgment, an injunction to prevent further harassment, damages for violation of his right of access to the courts, $93,000 in compensatory damages for the loss of the house, and other damages allowed by law.

On January 26, 2017, Defendants Moore, Furr, Inmon, Gonzales, Salles, and Smith filed a motion for summary judgment, contending that no genuine issues of fact existed as to any of Plaintiff's claims raised in the original complaint.  (D.E. 13).  In response to their motion for summary judgment, Plaintiff raised several claims for the first time.  (D.E. 14).  Specifically, Plaintiff claimed that Defendants: (1) denied Plaintiff the right to grow a beard as required by his religious beliefs; (2) stole his mother's death certificate; (3) violated his rights under the Equal Protection Clause; (4) arbitrarily and capriciously applied TDCJ-CID rules; (5) are liable for stolen property under the "Theft Liability Act;" (6) breached a contract; (7) committed common law fraud; (8) falsified government documents; and (9) censored legal materials with deliberate indifference (D.E. 14, pp. 3-5).

On April 7, 2017, the undersigned issued a Memorandum and Recommendation (M&R), recommending that the summary judgment motion be granted to the extent that Plaintiff's claims: (1) against Defendants Inmon, Gonzales, and the John and Jane Does should be dismissed; (2) regarding the outcome of the disciplinary hearing should be dismissed without prejudice as they cannot be addressed in a civil rights action; (3) of denial of access to courts should be granted as to all defendants for failure to state a claim; (4) raised for the first time in his response to the summary judgment motion should be dismissed without prejudice; and (5) seeking money damages against the agency or against any defendant in his or her official capacity.  (D.E. 15).

The undersigned further recommended that the summary judgment motion be denied without prejudice on Plaintiff's claim that Defendants Salles, Smith, Moore, and

Furr retaliated against him for exercising his constitutional right to file grievances.  (D.E.

15, p. 19).  The undersigned instructed that:

> Should Plaintiff wish to file an amended complaint limited to his claim that
> Defendants retaliated against him by denying release of funds from his
> inmate trust account to pay filing fees in a probate case, he must do so
> within 30 days of his receipt of this Memorandum and Recommendation.
> Defendants will have 30 days from their receipt of Plaintiff's amended
> complaint to reurge their motion for summary judgment, or file an amended
> motion for summary judgment.

(D.E. 15, pp. 19-20).

Plaintiff's amended complaint, dated May 1, 2017, was received by the Court on

May 9, 2017.  (D.E. 18).  Plaintiff names several defendants in addition to Defendants

Moore, Furr, and Salles.[1]    (D.E. 18, pp. 1-2).  Defendants Moore, Furr, and Salles

(collectively referred to hereinafter as "Defendants") subsequently filed their motion for

summary judgment on the retaliation claim identified by the undersigned in the M&R.

(D.E. 30).  Plaintiff has filed a response in opposition to the summary judgment motion.

(D.E. 33).  On March 1, 2018, District Judge Hilda G. Tagle adopted the M&R in all

respects.  (D.E. 34).

## III.    PLAINTIFF'S AMENDED COMPLAINT

The following allegations were made in Plaintiff's amended complaint.  On or

about September 18, 2015, Defendant Moore arrived at Plaintiff's cell under Assistant

Warden Furr's direction and seized certain legal materials and other personal documents

from Plaintiff.   (D.E. 18, p.3).   On or about September 21, 2015, Plaintiff filed a

---

[1] Defendant Smith does not join in the present summary judgment motion.  While Plaintiff refers to Jennifer Smith
in the body of his amended complaint, he does not list her as a defendant in the Amended Complaint.  (*See* D.E. 18).
Because Plaintiff has abandoned his claim against Ms. Smith, the undersigned will recommend below that she be
dismissed from this action.

grievance against Defendants Moore and Furr, complaining about this unlawful seizure. (D.E. 18, p. 3).

Sometime in September or October of 2015, Defendant Moore improperly charged Plaintiff with filing a false financial statement.  (D.E. 18, p. 3).  Plaintiff subsequently appeared in a disciplinary proceeding on this charge and was found guilty.  (D.E. 18, pp. 3-4).  As part of his punishment, Plaintiff's custody-level classification was dropped from G2 to G5.  (D.E. 18, p. 4).  On October 30, 2015, Defendant Furr answered and denied Plaintiff's disciplinary appeal.  (D.E. 18, p. 4).

On or about February 9, 2016, Plaintiff submitted a grievance complaining that the kitchen was serving pork on Saturdays, which is the Jewish Sabbath.  (D.E. 18, p. 5). This grievance was denied by Assistant Warden Furr.  (D.E. 18, p. 5).  On April 18, 2016, Plaintiff filed a grievance against a TDCJ official named Adrianna Cano, complaining that she did not allow him to review hearing records of his disciplinary case to prepare his appeal.  (D.E. 18, pp. 4-5).

On March 16, 2016, Plaintiff requested to withdraw $900.00 from his inmate trust fund account to cover the filing fees of the Dallas County Probate Court and a civil case filed in federal court.  (D.E. 18, p. 5).  According to Plaintiff, the monies were to be sent to his "Power of Attorney on Record at the time Karl H[o]dson [(POA Hodson)]."  (D.E. 18, p. 5).  Plaintiff alleges, however, that: (1) Assistant Warden Furr interfered and denied the release of funds from Plaintiff's inmate account; (2) his subsequent Step 1 grievance as to this matter was denied by Assistant Warden Furr on May 1, 2016; (3) Defendants Salles, and Smith interfered with Plaintiff's mail both to and from POA

Hodson; and (4) Defendants Moore, Furr, and Salles interfered with Plaintiff's attempt to file court papers in the probate case involving his mother's estate.  (D.E. 18, pp. 5-6).

Plaintiff asserts that he was unable to proceed with his probate case based on the actions of Defendants Moore, Furr, and Salles.  (D.E. 18, p. 6).  Because he was prevented from participating in the probate court proceedings of his mother, Plaintiff alleges that he lost a house and other personal property valued at $93,000.  (D.E. 18, p. 7).  Plaintiff seeks declaratory relief as well as "[a]n injunction to compensate for the defaulting on Plaintiff[']s Probate case on his deceased mothers estate in Dallas County, Texas."  (D.E. 18, pp. 9-10).

## IV.    SUMMARY JUDGMENT EVIDENCE

In their summary judgment motion, Defendants reference "Exhibit A" as consisting of Plaintiff's relevant grievance records.  (D.E. 30, p. 2).  However, "Exhibit A" consists solely of an email from Defendant Moore, dated April 1, 2016, to a TDCJ employee named Susan Heard concerning Plaintiff's POA Hodson.   (D.E. 30-1). Defendants nevertheless cite to Plaintiff's grievance records which were attached to Plaintiff's response to the initial summary judgment motion and were already a part of the record.  (D.E. 30, pp. 2-3; D.E. 14-1 and 14-2).  Plaintiff, in turn, has submitted his affidavit (D.E. 33-1, pp. 1-2) and a letter, dated April 7, 2016, from him addressed to "TDCJ Inmate Trust Fund" (D.E. 33-1, pp. 3-4).

### A.    Plaintiff's Relevant Grievance Records

In a Step 1 grievance dated September 21, 2015, Plaintiff complained about the unlawful seizure of certain legal materials and other personal documents.  (D.E. 14-1, pp.

8-9).  Assistant Warden Furr denied this grievance on October 8, 2015.  (D.E. 14-1, p. 9).

Plaintiff's Step 2 grievance was subsequently denied on October 26, 2015.  (D.E. 14-1, p.

11).

In a Step 1 grievance filed on October 1, 2015, Plaintiff appeal his disciplinary

case where he was convicted of filing a false financial statement.  (D.E. 14-1, pp. 13-14).

Assistant Warden Furr denied this grievance on October 30, 2015.  (D.E. 14-1, p. 14).

Plaintiff's Step 2 grievance was denied on October 30, 2015.  (D.E. 14-1, p. 16).

Plaintiff submitted a Step 1 grievance, dated February 9, 2016, in which he

complained among other things about the kitchen serving pork on Saturdays, the Jewish

Sabbath.  (D.E. 14-2, pp. 4-5).  Assistant Warden Furr denied this grievance on March

24, 2016.  (D.E. 14-2, p. 5).  Plaintiff's Step 2 grievance was denied on April 14, 2016.

(D.E. 14-2, p. 7).

Lastly, Plaintiff submitted a Step 1 grievance, dated May 1, 2016, in which

Plaintiff complained about Assistant Warden Furr's decision on April 6, 2016 to deny the

withdrawal of $900.00 for payment of filing fees in Plaintiff's cases.  (D.E. 14-2, pp. 17-

18).  Plaintiff contended that Assistant Warden Furr's action denied POA Hodson access

to Plaintiff's money and was a retaliatory act.  (D.E. 14-2, p. 17).  On June 8, 2016,

Assistant Warden Furr denied this grievance, finding "no evidence to substantiate

[Plaintiff's] allegations of staff misconduct, harassment, or retaliation."  (D.E. 14-2, p.

18).  Plaintiff's Step 2 grievance was denied on September 8, 2016.  (D.E. 14-2, p. 20).

### B.    Evidence Related Plaintiff's Inmate Account Funds

In her April 1, 2016 email, Defendant Moore advised that no monetary transactions should be approved between several inmates (including Plaintiff) and Mr. Hodson in order to ensure that Mr. Hodson did not assist these inmates in any criminal activity.  (D.E. 30-1).  Plaintiff complained in his April 7, 2016 letter to TDCJ that Warden Furr improperly denied his request to have monies withdrawn and transferred to POA Hodson in connection with his civil and probate court cases.  (D.E. 30-1, p. 3). Plaintiff demanded that his monies be released and sent to POA Hodson.  (D.E. 30-1, p. 4).

Plaintiff further states in his affidavit that he had a conversation with Defendant Moore on May 5, 2016, in which Plaintiff expressed his frustration regarding the denial of the release of monies from his inmate trust fund account.  (D.E. 33-1, p. 2).  According to Plaintiff, Defendant Moore told Plaintiff that he should not have money sent to someone who will steal it.  (D.E. 33-1, p. 2).

## V.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine

factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 46 F.3d 481, 490 (5th Cir. 2001).

## VI.   DISCUSSION

### A.      Plaintiff Claims Raised in his Amended Complaint

In the M&R, the undersigned granted Plaintiff additional time to file an amended complaint *limited* to his claims that Defendants Moore, Furr, Smith, and Salles retaliated against him by denying release of funds from his inmate account to pay filing fees in a probate case. (D.E. 15, p. 19). Plaintiff's amended complaint, however, contains additional claims against defendants previously named in this case as well as additional TDCJ officials. The Court already has dismissed many of these claims in the March 1, 2018 Order, which adopted the M&R in its entirety.

Plaintiff further has not moved to amend his complaint to add any additional claims that were not addressed in the M&R and the March 1, 2018 Order. Accordingly,

Plaintiff's amended complaint will only be considered to the extent it complies with the undersigned's instructions contained in the M&R and alleges a retaliation claim against Defendants Moore, Furr, and Salles.   All other claims and defendants identified by Plaintiff in the amended complaint are disregarded.

> **B.   Retaliation**

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'"  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.  *Morris*, 449 F.3d at 686.   Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).   "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates."  *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

Although Plaintiff does not have a free-standing right to complain that his request to withdraw funds for filing fees was withdrawn, an action taken by prison officials that is motivated by retaliatory animus may be actionable even though if taken for a different reason, would be legitimate. *Woods*, 60 F.3d at 1164-65. Proceedings that are not otherwise constitutionally deficient may be invalidated by retaliatory animus. *Id.* at 1165 (citations omitted). *See also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) (concluding that inmate raised issue of material fact regarding motives behind prison authorities' decision to move him to a less desirable job after he complained to warden about treatment).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id.* at 687.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v.*

*Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)).  An inmate must allege more than his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).   Mere conclusory allegations of retaliation will not withstand a summary judgment challenge.  *Woods*, 60 F.3d at 1166.  The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.*  A successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred.  *Id.*

The competent summary judgment evidence shows that: (1) Plaintiff filed several grievances which were denied by Assistant Warden Furr in late 2015 and early 2016; and (2) Assistant Warden Furr decided on April 6, 2016 to deny the withdrawal of $900.00 for payment of filing fees in Plaintiff's probate and civil cases.  While evidence has been presented showing that Plaintiff exercised a constitutional right, he has failed to establish every element of a retaliation claim.

Plaintiff has the burden of producing direct evidence of retaliation, or alleging a chronology of events from which retaliation may plausibly be inferred.  *Woods*, 60 F.3d at 1166.   Plaintiff has produced no evidence to show direct evidence of retaliation.  The competent summary judgment evidence shows a chronology of events that Assistant Warden Furr denied many Step 1 grievances filed by Plaintiff in late 2015 and early 2016.  Specifically, Assistant Warden Furr rejected Plaintiff's: (1) complaints about the unlawful seizure of certain legal materials and other personal documents (D.E. 14-1, p. 9); (2) appeal from his disciplinary conviction for filing a false financial statement (D.E.

14-1, p. 14); and (3) complaint about being served pork on Saturdays, the Jewish Sabbath. (D.E. 14-2, p. 5).

Evidence also has been presented showing that Assistant Warden Furr denied Plaintiff's request on April 6, 2016 to have funds withdrawn from his inmate account to pay for the filing fees in both his probate case and federal civil case. (D.E. 14-2, pp. 17-18). While the denial of Plaintiff's request occurred shortly after some grievances were filed, Plaintiff has presented nothing to support his belief that such rejection is connected solely to a retaliatory animus. At best, the competent summary judgment evidence shows only a temporal proximity between the time when Plaintiff's grievances were denied and the time when Assistant Warden Furr rejected his request to have $900.00 withdrawn from his inmate trust fund account. Such temporal proximity alone is insufficient to establish "but for" causation in a retaliation claim. *Reese*, 322 F. App'x at 383.

Furthermore, as Defendants explain, the TDCJ instructs all of its offenders that funds kept in an inmate trust fund account are subject to the following policy:

> An Inmate Trust Fund Account is held under the authority of TDCJ. Anyone who deposits or maintains funds in an Inmate Trust Fund thereby agrees to be bound by agency policies concerning such funds … in effect at the time these funds are placed in the account or thereafter. These policies include the forfeiture and disposition of the contents of such accounts. The agency may decide what funds shall be deposited, *what funds may be withdrawn and to whom these funds may be paid*.

Texas Department of Criminal Justice, "Offender Orientation Handbook," 66, *available at* http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf (emphasis added). *See also* Tex Gov't Code Ann. § 501.014(a) (stating that "[t]he department may spend money from an inmate account on the written order of the inmate

… or as required by law or policy *subject to restrictions on the expenditure established by law or policy*") (emphasis added).

Defendants submitted an email dated April 1, 2016 from Defendant Moore indicating that the withdrawals requested by Plaintiff were rejected because the person he chose as the recipient of the funds, POA Hodson, was an individual being monitored by the TDCJ in connection with criminal activity. (D.E. 30-1). Thus, even if Plaintiff could establish Defendants' intent to retaliate based on the chronology of events described, he cannot demonstrate that, but for some retaliatory motive, the rejection of his withdrawal request from his inmate trust fund account would not have occurred.

In sum, when viewing the competent summary judgment in a light most favorable to Plaintiff, no genuine issues of material fact exist as to whether Plaintiff can demonstrate a retaliation claim against Defendants regarding the denial of release of funds from his inmate account. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment on this retaliation claim and dismissal of same with prejudice.

### C.   Qualified Immunity

Defendants contend that they are entitled to qualified immunity which shields them from constitutional liability in their individual capacities. (D.E. 30, pp. 7-9). The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, he must claim that the defendant committed a constitutional violation under current law. *Id.* Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

It is often but not always appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation has occurred. *See Pearson*, 555 U.S. at 236. In this case, because Plaintiff has failed to establish a retaliation claim against Defendants in their individual capacities, it is not necessary to examine whether Defendants' actions were objectively reasonable. Accordingly, it is respectfully recommended that Defendants are entitled to qualified immunity as to Plaintiff's retaliation claim asserted against them in their individual capacities.

## VII. CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Defendant Smith be DISMISSED from this action as she was not named in Plaintiff's amended complaint. It is respectfully recommended further that Defendants Moore, Furr, and Salles's Motion for Summary Judgment (D.E. 30) be GRANTED, that these defendants

16 / 17

are entitled to qualified immunity with respect to Plaintiff's retaliation claim against them in their individual capacities, and that Plaintiff's retaliation claim with regard to the denial of release of funds from his inmate account be DISMISSED WITH PREJUDICE.

Respectfully submitted this 21st day of May, 2018.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).